## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Kerry Pickard, as the Executor of
The Estate of John Cedar and individually as
the heir at law of John Cedar, and Sandra
Cedar, an incapacitated person, by and through
her Next Friend, Kerry Pickard,**

    **Plaintiffs,**

**v.**                   Case No. 18-cv-2372-JWL

**United States of America,**

    **Defendant.**

## MEMORANDUM & ORDER

On January 18, 2017, John Cedar arrived at the Dwight D. Eisenhower VA Medical Center in Leavenworth, Kansas for emergency treatment after hurting his head in a fall. After medical providers at the hospital determined that the VA could not provide the necessary neurosurgery for Mr. Cedar's injury, a transfer was arranged. While waiting for and during the transfer, Mr. Cedar's condition worsened. Mr. Cedar did not recover from his injury and died on January 26, 2017.

Mr. Cedar's daughter, individually and as the executor of his estate, and his surviving spouse filed this lawsuit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), asserting wrongful death and survival claims under Kansas law based on the alleged negligence of health care providers and staff at the VA hospital. The United States moves for summary judgment, contending that all claims set forth in the complaint are barred by the applicable statute of limitations. As will be explained, the motion is denied.

**I.  Facts**

The following facts are uncontroverted or related in the light most favorable to plaintiffs as the nonmoving parties.  On March 16, 2017, the Department of Veterans Affairs (VA) received an administrative complaint from John Cedar's son, Jerry W. Cedar, via Standard Form 95 ("SF-95").  The form identified the claimant as "Jerry W Cedar/Decedent John J Cedar."  For the "amount of claim," the form indicated "N/A" for personal injury and "5.2 million US dollars" for wrongful death.  The narrative attachment to the SF-95 contains various allegations, including that Jerry Cedar's mother had been telling the staff at the VA that John Cedar was not waking up but that the staff was not doing anything about it; that John Cedar was never removed from the wheel chair that he was first placed in upon arriving at the VA, even after he had slipped into a coma; that Jerry Cedar was appalled to learn the type of care that his father had received; and that the VA's care ultimately led to his father's death, causing sorrow and mental anguish.  Neither the form nor the attachment identified any other potential claimants.  Jerry Cedar identified "Sandra L. Cedar" as a witness to the alleged negligent acts.

On July 6, 2017 the VA denied the administrative claim.  The VA's denial letter was addressed and delivered to Jerry Cedar by certified mail on July 13, 2017.  It is undisputed that the denial letter was not addressed or provided to any member of John Cedar's family other than Jerry Cedar.  It is further undisputed that plaintiffs had no knowledge of the claim submitted by Jerry Cedar and had no knowledge of the VA's denial of that claim until plaintiffs' subsequent administrative claims were denied.

On March 23, 2018, Kerry Pickard was appointed as the Executor of the Last Will and Testament of John J. Cedar.  On April 9, 2018, the VA received a letter from Dempsey &

Kingsland, P.C. (the "Dempsey Letter") as attorneys for the "Family of John Cedar" that included a recitation of the events described in the SF-95 submitted by Jerry Cedar on March 16, 2017. The letter transmitted a Standard Form 95 bringing an administrative claim for the personal injury and wrongful death claims of the Estate of John Cedar, Kerry Pickard, Sandra Cedar, and Jerry C. Cedar.[1] On July 2, 2018, the VA responded to the Dempsey Letter, stating that "[t]his claim was initially filed by Mr. Cedar's son on March 16, 2017. A complete investigation into the allegations was completed and this claim was denied on July 6, 2017." This lawsuit was filed on July 18, 2018.

## II.     Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

---

[1] Although the second SF-95 refers to "Jerry C. Cedar," the parties do not dispute that this person is the same as the "Jerry W. Cedar" who filed the first SF-95.

3

## III. Discussion

Although sovereign immunity generally shields the government from suit, *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999), the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., waives that immunity for certain tort claims. Specifically, it allows a plaintiff to sue the federal government for personal injury or property damage "caused by the negligent or wrongful act or omission" of government employees acting within the scope of their employment. *Id.* § 1346(b)(1). But to benefit from the FTCA's waiver, a plaintiff must comply with two limitations periods. First, he or she must present an administrative claim "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Second, he or she must bring the FTCA claim "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." *Id*. If he or she fails to meet either of these time constraints, the "tort claim against the United States shall be forever barred." *Id.*

In its motion for summary judgment, the government asserts that plaintiffs' claims must be dismissed because Jerry Cedar's administrative claim was denied more than six months before this lawsuit was filed and Jerry Cedar's claim binds the plaintiffs in this case. According to the government, Kansas law authorizes "one claim" for wrongful death and that "single claim" may be brought by any one of the heirs at law of the deceased. *See* K.S.A. § 60-1902; *Heimerman v. Rose*, 414 P.3d 745, 750 (Kan. 2018). The government, then, contends that Jerry Cedar was authorized to file a wrongful death claim on behalf of all claimants and the denial of that claim precludes a subsequent claim by any other wrongful death claimants. With respect to plaintiffs'

4

survival claim, the government contends that Jerry Cedar's claim impliedly presented a survival claim such that the denial of his claim started the six-month statute of limitations on plaintiffs' survival claim as well. The court rejects both arguments.

*Jerry Cedar's Administrative Claim for Wrongful Death*

The Tenth Circuit has recognized the general rule that if there are multiple claimants in a wrongful death matter, each claimant must individually file a claim. *See Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002). In *Haceesa*, three separate administrative claims were filed with the Indian Health Service after the death of Hardy Haceesa, a Navajo Indian. *Id*. at 733. The first two claims—one by Mr. Haceesa's wife and one by his daughter—were filed in July 1998. *Id*. The third claim, filed by the Estate, was filed in October 1998. *Id*. The government formally denied all three claims in April 1999. *Id*. The wife and daughter timely filed a lawsuit, but did not move to amend their complaint to add the Estate until December 1999. *Id*. The district court permitted the amendment and, after a bench trial, awarded plaintiffs total damages of over $2.1 million. *Id*. at 733, 724. On appeal, the Circuit reversed with instructions to dismiss the Estate's claims as untimely because the Estate's claims were added more than six months after the Estate's administrative claim was denied. *Id*. at 735.

In reversing the district court, the Circuit recognized that the "only way that the Estate's claims could be considered valid would be if the administrative claims filed on July 2, 1998, by Haceesa's wife and daughter were sufficient to place the Government on notice that they were seeking to assert a wrongful death claim on behalf of the Estate." *Id*. at 734. As the Circuit explained:

> If there are multiple claimants in an FTCA case, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim. Although it appears permissible for multiple claims to be asserted on a single claim form, to be valid the form must give constructive notice sufficient to warrant government investigation of each claim.

*Id*. (quotations, citations and alterations omitted).[2] Examining both the wife's claim and the daughter's claim, the Circuit concluded that neither claim gave the government specific notice that the claimants intended to assert causes of action on their own behalf and on behalf of the Estate. The wife's claim briefly described Mr. Haceesa's visit to the hospital and the events leading to his death and included assertions of loss of spousal support, loss of love and affection and emotional distress and mental anguish suffered by the wife. *Id*. at 734. The daughter's claim included assertions of loss of parental guidance and support, loss of love and affection and emotional distress and mental anguish suffered by the daughter. *Id*. at 735. The Circuit found that none of the allegations in either claim indicated that the claimants sought to recover damages for the damages personally incurred by Mr. Haceesa. *Id*.

Consistent with the Circuit's discussion in *Haceesa*, plaintiffs in this case properly submitted their own claim (on a single claim form but with sufficient notice of all claimants). *See Green v. United States of America*, 2003 WL 21500553, at *5 (E.D. La. June 24, 2003) (siblings were required to file their own individual administrative claims for wrongful death; administrative claim filed by one sibling was insufficient to put government on notice of other claims where administrative claim did not list other siblings as potential claimants and sibling who did file had

---

[2] The Circuit's reference to the FTCA's time limitation as a "jurisdictional prerequisite" has been abrogated by the Supreme Court's decision in *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), which held that the FTCA's time bars are nonjurisdictional and subject to equitable tolling.

no legal authority to file on behalf of his siblings). Indeed, because Jerry Cedar's administrative claim contains no allegations indicating that any other claimants were seeking wrongful death damages and no allegations indicating that he was authorized to file a wrongful death claim on behalf of anyone else,[3] plaintiffs were required to file their own claim form. *See* 28 C.F.R. § 14.2(a) (if a claim is submitted on behalf of another, claimant must submit evidence of his representative authority). Plaintiffs' decision to file a separate claim is also entirely consistent with the instructions on the second page of SF-95, which state: "If the incident involves more than one claimant, each claimant should submit a separate claim form." The government now criticizes plaintiffs for following the very instructions it provided on the form.

Finally, the government's reliance on Kansas law for its suggestion that the FTCA permits only one administrative claim for a single wrongful death is misplaced. Kansas law contemplates one "cause of action" for wrongful death in the sense that "a negligent wrongdoer can be compelled to answer but once for a single wrongful death." *Frost v. Hardin*, 1 Kan. App. 2d 464, 469 (1977). That principle is not violated here, and Kansas law has no bearing on the number of individual administrative claims that may be filed for wrongful death under the FTCA. As explained above, the FTCA contemplates that each claimant will file his or her own administrative claim for the same wrongful death cause of action, unless a single claim provides adequate notice of each claimant's claim.

For the foregoing reasons, the government's motion for summary judgment on plaintiffs' wrongful death claims is denied.

---

[3] The government does not contend that it had notice—actual or otherwise—that Jerry Cedar intended to assert a wrongful death cause of action on anyone else's behalf.

7

*Jerry Cedar's Purported Administrative Claim for Personal Injury*

The government next contends that summary judgment is required on the estate's survival claim because it was not asserted within 6 months of the denial of Jerry Cedar's administrative claim, which the government asserts should be construed as asserting a survival claim. A survival action allows the personal representative of the decedent's estate to recover damages accrued by the injured party between the time of injury and death, including pain and suffering experienced by the injured party between the time of injury and the time of death. K.S.A. § 60–1801; *see also Mason v. Gerin Corp.*, 647 P.2d 1340, 1343 (1982).

The government is not entitled to summary judgment on this claim. The SF-95 provides one box for the claimant to identify the "basis of claim." In that box, Jerry Cedar wrote "Wrongful Death due to negligence of attending ER Physician and staff at Leavenworth Kansas VA; Please refer to attached statement by Claimant Jerry W Cedar, son of Decedent John J Cedar." Nothing in this section, then, would notify the government that Jerry Cedar intended to assert a survival claim on behalf of the Estate. The form also provides three boxes for the claimant to specify the amount sought. The three boxes are designated "12a. Property Damage," "12b. Personal Injury," and "12c. Wrongful Death." The instructions warn that "[f]ailure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights." On his SF-95, Jerry Cedar listed "5.2 million US dollars" in the box marked "Wrongful Death," left the other two boxes blank, and listed "5.2 million US dollars" as the "Total" amount of the claim. By leaving the "Personal Injury" space blank, Jerry Cedar indicated that he was not pursuing a personal injury claim and that his sole claim against the government was for wrongful death. *Harris v. United States*, 2018 WL 5726212, at *2 (W.D. Mo. Nov. 1, 2018). Moreover, by failing to assign any

dollar amount to a claim for personal injury, no personal injury claim was ever presented to the VA even if Jerry Cedar intended to assert one. *See Fish v. United States*, 2009 WL 995468, \*4 (W.D. Pa. 2009) (dismissing survival claim where plaintiff "cannot escape the fact that she failed to include in her claim a sum certain—or any sum at all—for damages attributable to pain and suffering"); 28 C.F.R. § 14.2(a) (a claim is deemed to have been presented when, among other things, it includes a "sum certain" for specific injury asserted).

Despite these facts, the government insists that the allegations contained in Jerry Cedar's narrative attachment support the conclusion that he was asserting a survival claim and that the government construed the claim as such. The court disagrees. The allegations are clearly directed to the harm suffered by Jerry Cedar rather than to any personal injury sustained by the decedent. Jerry Cedar asserts that his father's death caused "sorrow and mental anguish" to him; that the care that his father received was appalling to him, Jerry Cedar; and that he lost his father's companionship. Nothing in the narrative indicates that Jerry Cedar was pursuing a personal injury claim on behalf of the estate. *See Haceesa*, 309 F.3d at 734-35.[4] And while the VA, in denying the Dempsey Letter, suggested that a "personal injury wrongful death claim" was initially filed by Jerry Cedar, the government presents no evidence that it construed Jerry Cedar's claim—at the time it was filed—as presenting a claim on behalf of the Estate. In short, neither Jerry Cedar's SF-95 form nor his narrative attachment can reasonably be interpreted to give notice of a survival

---

[4] The government concedes that a survival action for personal injury to a decedent must be brought by the personal representative of the decedent's estate. Nonetheless, the government contends that a claimant may file an administrative claim asserting personal injury damages despite the fact that the claimant is not the personal representative of the estate. The court declines to reach this argument. Regardless of Jerry Cedar's authority to file a personal injury administrative claim, Jerry Cedar simply never asserted that claim.

9

claim. For that reason, plaintiffs' SF-95 form and the Dempsey Letter was the first notice provided to the government of the estate's survival claim and this lawsuit, filed within six months of the denial of that claim, is timely filed. *See Selvidge v. United States*, 1994 WL 725399, at *6 (D. Kan. 1994) (dismissing survival claim where SF-95 was not sufficient to put government on notice of survival claim and gave notice only of claimant's status as an heir).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 11) is denied.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge