IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KERRY PICKARD, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) <br> _____) | Case No. 18-2372-JWL |

### MEMORANDUM AND ORDER

This matter comes before the Court on plaintiffs' motion pursuant to Fed. R. Civ. P. 59(e) to set aside the judgment against it (Doc. # 84). For the reasons set forth below, the Court **denies** the motion.

In this action, plaintiffs brought medical malpractice claims against defendant under Kansas law. Defendant moved to disqualify Dr. Joel Bartfield, plaintiffs' sole standard-of-care expert, under K.S.A. § 60-3412, which requires such an expert to have spent at least 50 percent of his or her professional time in the two years preceding the alleged malpractice devoted to "actual clinical practice." *See id.* In its Memorandum and Order of November 24, 2020, the Court reviewed the relevant Kansas cases, including *Endorf v. Bohlender*, 26 Kan. App. 2d 855 (2000); *Dawson v. Prager*, 276 Kan. 373 (2003); and *Schlaikjer v. Kaplan*, 296 Kan. 456 (2013). Based on the Kansas courts' statements in those opinions, this Court concluded as follows:

> Thus, under these cases, "active clinical practice" as used in Section 60-3412 means "patient care." Such care is not limited to direct patient care, in the sense that the practitioner is physically with a patient; it can also include indirect patient care, such as when the practitioner advises or consults to benefit a patient. Such care would not include purely administrative work or research or teaching that was not intended to benefit particular patients (whether or not the research or teaching could benefit unknown patients in the future).

The Court further concluded that it could not determine whether Dr. Bartfield satisfied this standard solely from his deposition testimony and his affidavit. The Court therefore conducted an evidentiary hearing, at which Dr. Bartfield conceded that he had devoted approximately 15 out of 40 hours each week to ongoing care of particular patients. Based on that testimony, the Court ruled that Dr. Bartfield did not satisfy Section 60-3412's standard, and it granted the motion to strike him as an expert witness. In addition, plaintiffs had not disputed that their claims required expert standard-of-care testimony, and the Court therefore also granted defendant's motion for summary judgment. Judgment was thus entered in favor of defendant on plaintiffs' claims on December 7, 2020.

By motion filed December 28, 2020, plaintiffs seek to set aside the judgment pursuant to Rule 59(e). Plaintiffs do not argue that the Court erred in disqualifying Dr. Bartfield or in granting summary judgment based on that disqualification. Rather, plaintiffs argue that their claims should be considered on the merits and that relief under Rule 59 is therefore necessary to prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (grounds warranting a motion to reconsider under Rule 59(e) include a change in law, new evidence, and the need to correct clear error or prevent manifest injustice). Specifically, plaintiffs seek to reopen the case and to amend

the previous scheduling order so that they may designate a new liability expert. Plaintiffs offer to pay any costs associated with the designation of a new expert to mitigate any prejudice to defendants.

Plaintiffs argue that manifest injustice will result if they are not granted relief. "Although the Tenth Circuit has not specifically defined 'manifest injustice' in the Rule 59(e) context, other courts have defined manifest injustice as more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *See Thymes v. Verizon Wireless, Inc.*, 2016 WL 97777487, at *2 (D.N.M. Sept. 28, 2016) (citation and internal quotation omitted).

Because plaintiffs ultimately seek to alter the previous schedule, the Court also considers the standard for amendment of a scheduling order. Fed. R. Civ. P. 16(b)(4) requires "good cause" for the modification of a scheduling order. *See id.* This standard requires the movant to show that the original deadline could not have been met despite the movant's diligent efforts, and the moving party must provide an adequate explanation for any delay. *See Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). "Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *See id.* (citations and internal quotations omitted). District courts have considerable discretion in applying this "good cause" standard. *See id.*

In addition, in reviewing a district court's denial of an amendment to allow for designation of a new expert after exclusion of a previously-designated expert, the Tenth

Circuit has considered the following factors: the prejudice or surprise to the non-movant; the ability to cure prejudice; disruption to the orderly trial of the case or to other cases; and bad faith or willfulness in failing to comply with the existing schedule. *See Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (citing *Summers*). The district court is afforded broad discretion with respect to the scheduling order. *See Rimbert*, 647 F.3d at 1254. The Tenth Circuit has stated that "[i]n the normal course of events, district courts are well within permissible discretion to deny the opportunity to name a new expert after discovery has closed and a party receives an unfavorable *Daubert* ruling." *See id.* at 1256.

Finally, in this case, plaintiffs seek to avoid the dispositive effect of the exclusion of their expert. Thus, the Court finds relevant the factors that the Tenth Circuit has applied to the review of a plaintiff's motion for voluntary dismissal without prejudice intended to allow for a subsequent suit to be filed after retention of a new expert. *See Brown v. Baeke*, 413 F.3d 1121, 1124 (10th Cir. 2005). Such a motion falls within the district court's discretion. *See id.* at 1123. Such a motion may be denied because of legal prejudice to the defendant, and relevant factors include the defendant's effort and expense in preparing for trial, the movant's excessive delay or lack of diligence, sufficiency of the movant's explanation for the need for relief, and the present stage of the litigation. *See id.* at 1124.

After considering the relevant considerations in this case, the Court concludes that plaintiffs have not shown that they should be granted the relief they seek. Plaintiffs have offered to pay all additional costs incurred by defendant as a result of reopening the case and allowing for the designation of a new expert, and they argue that such a condition

would address any prejudice to defendant. Other factors weigh against plaintiffs here, however.

Foremost is plaintiffs' lack of diligence in seeking this relief. At Dr. Bartfield's deposition on July 15, 2020, defendant's counsel asked questions clearly designed to test compliance with Section 60-3412, and defendant filed the motion to exclude his testimony based on that statute on August 28. Plaintiffs thus had notice at that time of the possibility of Dr. Bartfield's disqualification. Nevertheless, in response to the motion, plaintiffs did not seek to substitute a new expert, even as alternative relief in the event that the Court excluded Dr. Bartfield. Indeed, there is no indication that plaintiffs even attempted to find and retain an alternate expert at that time. In addition, in its Memorandum and Order of November 24, 2020, the Court explained the manner in which it intended to apply the statute in this case, and it should have been clear to plaintiffs at that time that Dr. Bartfield would not pass muster; nevertheless, plaintiffs again failed to request the opportunity to substitute a new expert (and seemingly failed to search for such an expert). Nor did plaintiffs seek this relief at the evidentiary hearing, either in response to Dr. Bartfield's concessions (which sealed his fate), or in response to the Court's ruling excluding him. Instead, plaintiffs waited until three weeks after the Court had granted defendant summary judgment.

Moreover, plaintiffs' explanation for the delay in requesting the opportunity to find a substitute expert is not compelling. Plaintiffs suggest that they could not have foreseen the Court's application of a new interpretation of the statute; but the Court's conclusion about the manner in which the statute should be applied in this case, quoted above, was

based directly on language from the three seminal Kansas cases that the parties had discussed in their briefs, by which those courts made clear that time devoted to education or research or administration that benefits patients only generally does not count as "actual clinical practice" under the statute. This was by no means a novel or unfounded interpretation of the statute. Furthermore, even if the Court's conclusion in fact surprised plaintiffs (whether or not it *should* have been surprising), the ultimate outcome of the motion to strike should have been clear to plaintiffs (who had submitted an affidavit by Dr. Bartfield in response to the motion and who therefore had been in communication with Dr. Bartfield about the breakdown of his professional time) after the Court's November 24 order. Plaintiffs have offered no explanation for failing to seek relief at that time.[1]

Even now, it does not appear that plaintiffs have actually located a new expert. Plaintiffs have not indicated in their motion that they could designate a new expert at this time, and thus plaintiffs have offered no assurance that they are able to find an expert who would give opinions favorable to their case. Nor have plaintiffs suggested any particular deadlines or otherwise indicated how long it would take them to locate such an expert.[2]

Finally, trial was less than two months away when the Court granted the motion to exclude Dr. Bartfield, and plaintiffs waited until the Court had already granted summary judgment before seeking to substitute a new expert. The late stage of the litigation weighs against plaintiffs here.

---

[1] As defendant points out, plaintiffs' attorneys, as experienced medical malpractice pracititioners, would have been familiar with the statute and the relevant caselaw.

[2] Plaintiffs have not even filed a reply brief to address these issues or other issues raised by defendant in its response brief.

These circumstances distinguish the present case from cases in which plaintiffs were allowed time to substitute a new expert. As noted by the Tenth Circuit in *Rimbert*, in *Summers* the plaintiffs acted diligently, promptly obtained new expert opinions, and filed their motion 80 days before trial; and the circumstances were unique, as the plaintiffs' disqualified experts had been referred to them by the defendant, who thus had a hand in the plaintiffs' predicament. *See Summers*, 132 F.3d at 604; *Rimbert*, 647 F.3d at 1254 (citing *Summers*). No such unique circumstances are present in this case, as plaintiffs failed to act diligently, waited until summary judgment had been entered (and then waited three weeks more) before seeking relief, and still have not obtained new expert opinions.

In *Rimbert*, the plaintiff acted diligently and there was no trial date or even any deadlines to extend, as the judge to which the case had been reassigned had vacated the entire schedule; and the defendant's *Daubert* motion had been denied by the original judge, and thus the plaintiff had no reason to anticipate exclusion by the second judge. *See Rimbert*, 647 F.3d at 1254-55. Again, the Tenth Circuit stated that "[i]n the normal course of events, district courts are well within permissible discretion to deny the opportunity to name a new expert after discovery has closed and a party receives an unfavorable *Daubert* ruling;" but that the "unique circumstances" present in that case required a different result. *See id.* at 1256. No such unique circumstances are present in this case, in which plaintiffs should have anticipated the need for a new expert far earlier and thus demonstrated a lack of diligence.

In *Brown*, the plaintiffs did not delay or lack diligence, as they filed their motion for voluntary dismissal with prejudice (to allow time to find a new expert) even before the

7

Court had ruled on the defendant's motion for disqualification under Section 60-3412; and as noted by the district court and the Tenth Circuit, the plaintiff's expert designation issues were "uniquely unpredictable" (the plaintiffs had lost one standard-of-care expert to a conflict). *See Brown*, 413 F.3d at 1123-25. Again, here plaintiffs waited until the motion to strike had been ruled and summary judgment had been granted, and the exclusion of Dr. Bartfield was entirely predictable, especially after the Court's November 24 order.

In *Olsson ex rel. Olsson v. Gross*, 2010 WL 654747 (D. Kan. Feb. 23, 2010), the district court allowed the plaintiff to dismiss without prejudice so that either the expert could recover lost data or a new expert could be found. *See id.* at *2. The court relied on the facts that the plaintiff was not at fault for the loss of the data, the plaintiff did not delay or lack diligence, no pretrial order had been entered, discovery was ongoing, the defendant had not yet designated experts, and the motion was not filed on the verge of trial or because a summary judgment motion had been filed. *See id.* By contrast, plaintiffs here lacked diligence, discovery had ended, trial was imminent, and plaintiffs filed their motion *after* summary judgment had already been granted.

Finally, the Court notes that the Tenth Circuit upheld this Court's denial of a motion for voluntary dismissal without prejudice in *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354 (10th Cir. 1996). In that case, the plaintiff did not act diligently and had been facing a summary judgment motion for four months, and the Tenth Circuit agreed that a plaintiff should not be able to avoid an adverse decision on a dispositive motion in that manner. *See id.* at 358.

Plaintiffs have not cited any case in which the court reopened the case and permitted the substitution of a new expert after summary judgment had been granted and judgment had been entered for the defendant. Thus, plaintiffs have not provided authority supporting the argument that manifest injustice for the purpose of Rule 59 would result if such relief is not granted. Plaintiffs have not shown such manifest injustice in this case, as the Court does not agree that the result in this case will be fundamentally unfair. It is not unusual for a party to face a motion to exclude its expert, as a district court must act in its role as gatekeeper under *Daubert* and any applicable expert qualification statutes. Nor does the exclusion of an expert to the detriment of a party's case present a unique circumstance. As the Tenth Circuit has confirmed, a district court has the discretion to preclude a party from substituting a new expert for a disqualified one after discovery had closed. Given the governing caselaw, plaintiffs here should have realized their jeopardy when defendant first filed its motion (and even when they first interviewed Dr. Bartfield as a potential expert), but they failed to act, even after the Court told the parties how it intended to apply the Kansas qualification statute. For these reasons, the Court is not persuaded that good cause exists for extending the previous expert deadlines; nor is it persuaded that it must reopen the case and allow plaintiffs time to search for a possible substitute expert in order to prevent manifest injustice. Accordingly, plaintiffs are not entitled to relief under Rule 59(e) and Rule 16(b), and the Court denies the instant motion.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion pursuant to Fed. R. Civ. P. 59(e) to set aside the judgment against it (Doc. # 84) is hereby **denied**.

IT IS SO ORDERED.

Dated this 9th day of February, 2021, in Kansas City, Kansas.

                                                *s/ John W. Lungstrum*
                                                John W. Lungstrum
                                                United States District Judge